FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 25 2022

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DEONTA ROWE                                                              PLAINTIFF

V.                        CASE NO. 4:22-CV-*370-JM*

TTEC@HOME, LLC                                                           DEFENDANT

## ORIGINAL COMPLAINT

COMES NOW Deonta Rowe, by and through his attorney Chris Burks of WH LAW, for his

Original Complaint against TTEC@HOME, LLC, they do hereby state and allege as follows:

### I.    JURISDICTION AND VENUE

1.      Plaintiff brings this action pursuant to Americans with Disabilities Act of 1990

("ADA"), for declaratory judgment, injunctive relief, compensatory damages, and costs,

including a reasonable attorney's fee as a result of his termination in violation of the Americans

with Disabilities Act of 1990, as amended (hereinafter "ADA").

2.      Plaintiff also brings this action under the Arkansas Civil Rights Act of 1993, Ark.

Code Ann. § 16-123-101, *et seq.* ("ACRA") ("Arkansas Civil Rights Act" or "ACRA") for

discrimination on the basis of disability.

3.      The United States District Court for the Eastern District of Arkansas has subject

matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises

federal questions under the ADA.

4.      This Complaint also alleges violations of the Arkansas Civil Rights Act which form

part of the same case or controversy and arise out of a common nucleus of operative facts as the

ADA claims alleged in this Complaint.

This case assigned to District Judge _Moody_
and to Magistrate Judge _Erwin_

5.     Therefore, this Court has supplemental jurisdiction over Plaintiff's ACRA claims pursuant to 28 U.S.C. § 1367(a).

6.     The acts complained of herein where committed, and had their principal effect, within the Eastern District of Arkansas, and therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

## II.     THE PARTIES

7.     Plaintiff Deonta Rowe is a citizen of the United States and a resident of and domiciled in the State of Arkansas. At all times relevant to the allegations in this Complaint, Plaintiff was employed by Plaintiff as a small business retention specialist at their call center in Sherwood, Arkansas.

8.     Defendant is an employer within the meanings set forth and applicable to federal and state laws, and was, at all times relevant to allegations in this Complaint, Plaintiff's employer.

9.     At all times material herein, Plaintiff was entitled to the rights, protections and benefits provided under the ADA and the ACRA.

10.     Defendant is a foreign limited liability company that is registered to do business in the state of Arkansas.

11.     Defendant can be served through its registered agent, CT Corporation System, located at 124 West Capitol Ave., Suite 1900, Little Rock, AR 72201.

12.     Defendant is an "employer" within the meanings set forth in the ADA and the Arkansas Civil Rights Act, and at all times relevant to this action, Defendant was Plaintiff's employer as defined by the ADA and the Arkansas Civil Rights Act of 1993, A.C.A. § 16-123-101, *et seq.*

13.     At all times relevant to this action, Defendant was an employer subject to the anti-discrimination provisions of the ADA and the ACRA.

## III.     FACTUAL ALLEGATIONS

14.     Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

15.     Plaintiff was hired by Defendant as an Outbound Sales Representative on November 8, 2019.

16.     Plaintiff's job duties included providing customer service for outbound sales calls to Defendant's commercial and public sector consumers.

17.     Plaintiff was injured in a car accident that resulted in physical disabilities, including spinal stenosis, that caused muscle weakness, pain, and an inability to stand for long periods, thus substantially limiting major life activities.

18.     In June 2021, Plaintiff underwent a laminectomy, a surgical procedure on the vertebral bone in his spinal cord to repair spinal stenosis resulting from his car accident.

19.     Due to the seriousness of the procedure, Plaintiff was unable to live alone from June 2021 to December 2021. During the recovery from his procedure, he was substantially limited in his ability to sit upright or stand for prolonged periods, in addition to his ability to bend, twist, reach, and walk.

20.     Plaintiff's physician did not approve him to return to work until December 2021, at which time he would have recovered sufficiently from his surgery to be able to perform the physical functions necessary for his position as an Outbound Sales Representative.

21.     Plaintiff applied for leave under the Family Medical and Leave Act (FMLA), as he was unable to perform his position from June 2021 to December 2021, while recovering from his surgery.

22.     Defendant approved Plaintiff for FMLA leave from June 7, 2021 to August 20, 2021, at which point they advised him that his "available leave time [had] been exhausted."

23.     In June 2021, when he was initially placed on FMLA leave, Plaintiff was told by Defendant's Human Resources department that he could apply for a full medical leave closer to August 20, 2021, when his current FMLA leave was exhausted.

24.     With the knowledge that his FMLA leave time was exhausted but that he was not cleared by his physician to return to work until December 2021, Plaintiff contacted TTEC's Human Resources Department in August 2021, to initiate the process of applying for a full medical leave.

25.     Plaintiff was then told he was not approved for a full medical leave, but that he could apply for an accommodation of medical leave under the ADA as he was unable to work due to a disability that substantially limited his major life activities.

26.     On August 20, 2021, Plaintiff was told to submit his ADA accommodation request for medical leave by creating a Human Capital Ticket and submitting this through the Defendant's internal Human Resources website.

27.     Plaintiff contacted his team lead, Ezequiel Madrigal; his sales delivery manager, Dareen Campbell; and Defendant's Human Resources employees Anna Hagen and Melissa Kendrick, and requested assistance with the ADA accommodation process, since he had received

conflicting information and was unfamiliar with the Defendant's online system to submit this request.

28.     On September 6, 2021, Plaintiff sent an email to Defendant's employees Campbell, Kendrick, Hagen, and Madrigal, providing his availability for a call as he still needed assistance submitting his ADA accommodation request for medical leave.

29.     On September 6, 2021, Defendant's sales delivery manager, Dareen Campbell, responded to his request for assistance by questioning what Plaintiff planned to do if his leave was not approved, stating, "we haven't got much [return of investment] since you started with the company because we saved your job when you weren't able to meet the expectations in Presales when we could have followed corrective protocols per HC."

30.     Campbell also stated that Plaintiff's request for accommodations under the ADA was not a "top priority," because management was occupied with "training agents to replace agents... like yourself who aren't accounted for a job that for the most part requires exceptional attendance."

31.     Campbell's email threatened Plaintiff's position by implying the company was not pleased with his performance and had already saved his job when they could have terminated him for performance, which had no bearing on the fact that he was requesting ADA leave for a medical issue.

32.     Campbell's email further emphasized to Plaintiff that his situation and his request for accommodations was not a "top priority" for the Defendant, and that they were focused on hiring employees who could provide "exceptional attendance."

33.     Campbell made these statements with full knowledge of the fact that Plaintiff was unable to provide "exceptional attendance" due to his medical condition and recovery from a necessary spinal surgery, and that he had not been cleared by his physician to return to work until December 2021.

34.     Accordingly, Plaintiff interpreted this message from Campbell, his direct supervisor, as a threat that his position was in jeopardy due to his accommodation request.

35.     Plaintiff further interpreted Campbell's email as proof that Defendant was refusing to engage in an interactive process with him for an accommodation for his ADA-qualifying disability.

36.     Plaintiff was never contacted by Defendant by phone for assistance submitting his ADA accommodation request, even though he advised Defendant's agents repeatedly that he needed assistance with this process and provided his phone number and his availability for a phone call.

37.     Finally, on October 5, 2021, Plaintiff received a call from Defendant's Human Resources employee Melissa Kendrick, who informed Plaintiff that he had been placed on unpaid leave after his FMLA leave was exhausted on August 20, 2021.

38.     Kendrick informed Plaintiff that if he was unable to return to work due to medical reasons, or did not want to return, then he could submit his voluntary resignation to her.

39.     Plaintiff expressed to Kendrick that he did not request to be placed on unpaid leave and that he did not want to voluntarily resign, because his expressed desire had always been to be allowed to apply for an ADA accommodation for medical leave due to his recovery from a surgery and his related qualifying disability.

40.     Plaintiff told Kendrick that he was still physically not able to return to work due to his recovery from his spinal surgery four months prior.

41.     At no point prior to October 5, 2021 was Plaintiff informed by Defendant that he had been placed on unpaid leave after his FMLA leave was exhausted on August 20, 2021.

42.     From August 20, 2021, when he first requested assistance with his ADA accommodation request, to October 5, 2021, when Defendant finally informed Plaintiff he had been placed on unpaid leave on August 20, 2021, Plaintiff was uncertain of his employment status, was unable to apply for his requested accommodation, and did not receive any interactive engagement from his employer, despite repeated requests.

43.     On the contrary, Defendant's response to Plaintiff was to make threats toward his employment and to tell him that his accommodation request was not a priority for the company.

44.     Plaintiff could still do his existing job with a reasonable accommodation of temporary medical leave under the ADA from August 2021 to December 2021.

45.     Defendant failed to engage in an interactive process with the Plaintiff and provide him with a reasonable accommodation regarding his accommodation request.

46.     Defendant's failure to communicate with Plaintiff and engage in an interactive process had the substantive effect of Defendant terminating Plaintiff on August 20, 2021, when his FMLA leave was exhausted.

47.     Defendant's failure of accommodation and discharge disparately impacted Plaintiff, as well as other employees with qualifying medical conditions.

48.     Plaintiff's employment was ended as a direct result of discrimination on the basis of Plaintiff's disability status and Defendant's intentional and willful disparate treatment of its disabled employees in the workplace.

49.     Defendant offered no meaningful reasonable accommodations to Plaintiff from August to October 2021, in direct violation of the ADA, up to and including, the ability to do his existing job with a reasonable accommodation.

## IV.     FIRST CAUSE OF ACTION
### (Violations of the ACRA Anti-Discrimination Provisions)

50.     Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

51.     Plaintiff brings this action against Defendant under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, *et seq.* ("Arkansas Civil Rights Act" or "ACRA").

52.     Defendant intentionally discriminated against Plaintiff on the basis of his "physical disability" in violation of A.C.A. § 16-123-107.

53.     Claims brought under the ACRA are governed by the same standards as Title VII claims. *Clegg v. Ark. Dep't. of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007).

54.     As more fully described hereinabove, Defendant, through their agents and employees, including Plaintiff's supervisor(s), discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment due to Plaintiff's disability status. Plaintiff was denied the right to obtain and hold employment without discrimination.

55.     As a result of Defendant's violations of the ACRA, Plaintiff seeks injunctive relief, front pay, back pay, attorney's fees and costs, compensatory damages for any past or future out-of-pocket losses and any emotional harm, and punitive damages.

## V.    SECOND CAUSE OF ACTION
### (Violations of the ADA Anti-Discrimination Provisions)

56.    Plaintiff repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

57.    Plaintiff filed a charge with the Equal Employment Opportunities Commission alleging violations of Title I of the ADA by Defendant.

58.    Plaintiff received a Notice of Rights Letter.  All conditions precedent to the institution of this lawsuit have been fulfilled.

59.    Defendant engaged in unlawful employment practices at their facility in Pulaski County, Arkansas, in violation of Sections 102(a) of the ADA, 42 U.S.C. § 12112(a).

60.    Specifically, Defendant failed to engage, accommodate, and ultimately discharged Plaintiff from his employment with Defendant because of his disability.

61.    At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA, and could perform the essential functions of the position from which he was removed, had Plaintiff been approved for a reasonable accommodation of temporary medical leave under the ADA from June 2021 to December 2021.

62.    Despite his ability to perform the essential function of his job, with reasonable accommodations, Plaintiff was terminated.

63.    Plaintiff underwent a laminectomy to relieve spinal stenosis caused by a car accident, which is a qualified disability as defined by the Americans with Disabilities Act of 1990 (the "ADA") and was substantially limited in performing one or more major life activities, including but not limited to pain, decreased range of motion, and muscle weakness.

64.     At all times herein, Defendant failed to offer or provide any reasonable accommodation to Plaintiff prior to termination in 2021, including, but not limited to, allowing him medical leave from August 2021 to December 2021, as is mandatory under ADA § 42 USCA § 12111, which states that a "reasonable accommodation" includes "job restructuring, part-time or modified work schedules, … and other similar accommodations for individuals with disabilities."
*Id.*

65.     The effect of the practices complained of above, has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as employee because of his disability.

66.     The unlawful employment practices complained of above were and are intentional.

67.     The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

68.     Pursuant to the Americans with Disabilities Act of 1990, Plaintiff is entitled to, and he seeks, an additional amount as liquidated damages equal to the sum of his lost wages or salary, benefits and/or other compensation denied or loss to him by reason of Defendant's violations of the ADA, plus any interest he is entitled to for these causes, because Defendant's violations were not in good faith and Defendant had no reasonable grounds for believing that its actions were not in violation of the ADA.

## VI.    PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Deonta Rowe respectfully prays as follows:

A.    That Defendant be summoned to appear and answer this Complaint;

B.    For an order of this Honorable Court entering judgment in his favor against Defendant, for his actual economic damages in an amount to be determined at trial, and compensation for wages lost;

C.    For punitive damages and injunctive relief;

D.    For his attorney's fees, costs, pre-judgment interest; and

E.    For such other and further relief as this Court deems necessary, just and proper.


Respectfully submitted,

**Deonta Rowe, PLAINTIFF**

WH Law | We Help
1 Riverfront Pl. – Suite 745
North Little Rock, AR 72114
(501) 891-6000

By:     *Chris Burks*
        Chris Burks (ABN: 2010207)
        chris@wh.law